Judge Van Dyke, and may it please the court, my name is Daniel Wolfter and I represent the petitioner, Atif Rafay. I'd like to reserve three minutes for rebuttal, please. This is the needle in a haystack case where habeas relief is warranted even under the AEDPA because of extreme dysfunction in the state proceedings. An American trial court applied a foreign legal standard used in Canada to hold that my client's false and cremating statements were admissible. Statements that were elicited using a Canadian police technique that has never been attempted on our soil and which all sides have agreed since the outset would be illegal in this country. No court has at any point in this case weighed the totality of the relevant circumstances to determine whether Atif's statements were voluntary, either because undercover officers posing as mobsters made him fear for his life to coerce him to speak, or because the tactics they used would overcome the will of an ordinary suspect. Had any court actually performed our Fifth Amendment inquiry, there is no question that my client was afraid he would be killed if he didn't try to confirm Sebastian's made-up story about murdering his family, stories that contradicted each other and contradicted all of the alibi and forensic blood, hair, and fingerprint evidence presented at trial. There is simply no way to look at this record and come away with the conclusion that these big techniques are not inherently coercive. So just like the other case we just heard, we're in the world of AEDPA, 254 D, unreasonable application or contrary to, or an unreasonable determination of the facts. So we look through to the last reasoned court decision here, which is the Washington State Court of Appeal decision, correct? Correct, Your Honor. Okay. Do we also need to look through to the Washington State Superior Court decision? Yes, Your Honor. And that's because the Court of Appeals was applying substantial evidence review, which required it to scour the record for anything that could support what it viewed as the trial court's factual determination of admissibility. And because it was applying substantial evidence review that required it to look at the record in the light most as the Supreme Court. It did repeat many of the Superior Court's findings of fact after the court conducted that three-day, what was a fairly long hearing, and then issued an oral decision and then issued a written findings prepared by the prosecutor, I think it was. He edited it and signed off on it. But so the Washington Court of Appeal did its own pretty thorough analysis of about five pages on the Fifth Amendment claim. Two points, Your Honor. One, we know from the Supreme Court's decision in Rogers v. Richmond that when that trial court decision was based on the incorrect legal standard, and there's no way to look at the trial court opinion here and come away and not think that it was based on an incorrect legal standard that is not the Fifth Amendment inquiry required by our Constitution. So if we were reviewing de novo, I would agree with you that we need to look to Rogers, but we have, but you have to get over the AEDPA deference hurdle. Correct, Your Honor. But that hurdle is overcome because the Court of Appeals in this case said, you know, we are going to ignore whether or not, I'm sorry, let me restate. The Court of Appeals in this case looks like it's performing a totality of the circumstances analysis. I will give you that. But when you actually look at how it describes the facts in this case, it is entirely skewed because, and this is right out of the Court of Appeals opinion, it says that the only question for it to decide was, quote, whether there is substantial evidence in the record from which the trial court could have found that the confession was voluntary by a preponderance of the evidence. And that's at ER 62. And this is why the Court of Appeals description of the record is entirely one-sided, and that is not the same thing as weighing all the totality of the circumstances. And incredibly, we have only found a single appellate case in all of Washington. So, yeah, you say that, but like literally the very next sentence of the one you just quoted says, the voluntariness of a confession necessarily depends on the totality of the circumstances. So, and it cites to Unga and Fomente, Somanente, however you say it. I don't, it seems to me like you're taking just the substantial evidence thing and you're saying, you know, that's a review, that's a way they review, we review cases using that same standard. But I don't see how that necessarily changes as long as they're applying the correct standard, which, like you said, they say they're doing. Well, you know, as Rogers v. Richmond requires, and as this Court said on Bonk and Franz Viehese, an EPPA case, when those facts are found through the incorrect legal standard, that is contrary to Supreme Court precedent. So when the trial court says, I am finding this fact, which is the same fact that the Canadian courts found applying their Canadian charter rights and also saying objectively that these Canadian tactics would not shock the conscience of a Canadian citizenry and bring the Canadian justice system into disrepute, that is so clear a violation of our Fifth Amendment inquiry, which is entirely different. Once that happens, that is contrary to Supreme Court case law. This Court said in Cordoza that you do not need to defer to whether or to the determination of the Court of Appeals from the State of Washington as to whether that decision was contrary to Supreme Court case law. And once it is— Couldn't you just read the trial court's decision on the point you made where he said, I also find, or whatever those words were, I so find. Wasn't he referring to it was not coercive? He was referring, Your Honor, to the objective argument that we have been making since the under the self-same issue, I find that the Canadian police tactics would not bring the administration of justice into disrepute. No, but before that, he said he made that statement about he so finds or he— Yes, I find the same under the self-same issue that there is— Right, but if you read that in context, couldn't the Washington Court of Appeal just say that all he was finding was that there was no coercion? I mean, you know, even if it were— See, the problem is he did conduct a very lengthy hearing. Correct. And he got to view all the witnesses and got to hear the whole story. Right? Yes. So he's making his findings and, you know, maybe he's not as thorough and complete as we would all like. It's not just that he wasn't thorough and complete, Your Honor. You know, as we know from Franz V. Hazey and from the Supreme Court's decision in Wilson v. Sellers, what you have to do is you have to look at what the court actually says. And what the court actually says is that these statements were given in a non-custodial setting. The defendants were free to speak or not speak. That's the legal conclusion. The defendants were free to leave or not. That's the same thing as saying they weren't in custody. And the defendants were free to consult their Canadian counsel or not, as they chose. The Canadian court reviewed and found no evidence of coercion, and this court makes the same finding. The Canadian court, in reviewing the self-same issue under Canadian charter rights, found no duress, found nothing under Canadian police standards that would bring the administration of justice into disrepute. Our constitutional test asks a very different question. Our constitutional test is twofold. One, was their will actually overborne? And two, would these tactics overcome the will of a run-of-the-mill suspect? Okay, now we get to the State Court of Appeal decision, and they do another analysis, and they clearly cite Fulminante. Correct, but what they don't do, and you can scour the Court of Appeal's opinion, you will not see a single instance where it is addressing my client's claim that he has made from the outset that these tactics are inherently coercive, such that these statements were unlawful, no matter the circumstances. And, you know, it is clearly established since Miller v. Fenton, actually long before Miller v. Fenton, this objective inquiry. And the Court of Appeals doesn't say that at all. And the reason that you know the Court of Appeals doesn't address that is because the Court of Appeals rests its reasoning, again, viewing the record in the light most favorable to the prosecution, that Sebastian's was extremely resilient and was not intimidated. But we know under the objective standard that once you say that, you know that it is inherently coercive, because anything that would require an iron will to resist renders the statements involuntary. The Supreme Court has set forth a number of circumstances that are unlawful objectively. The most obvious one is violence. When there's violence, we don't look to the circumstances. We don't look to how hardy the defendant is. Those statements are out. They've said 36 hours of continued detention and interrogation. That is inherently unlawful. They- Make sure you're going awful fast. You're kind of going too fast for me, but- I'll try to slow down. When you say, no, no, no, I'm sorry. But I want to go back to, you said the Arizona Court of Appeals nowhere considered whether these were inherently coercive, whether these were tactics, these Canadian tactics that Mr. Big type operate. But, I mean, maybe they didn't use those words exactly, but they do this Fulminante-like analysis where they are distinguishing this case from that case. And it seems to me the only reason you would be doing that, you'd say, well, Fulminante, the person's in prison. This case, they're not in an incarcerated context. They're explaining, they're distinguishing these things. Why else are they doing that other than to sort of address whether or not these are, quote, unquote, inherently coercive? It seems to me like, I mean, you're wanting us to read this in a way that EPA kind of provides the opposite presumption, right? Like, and so I- Well, again, Your Honor, like even under the EPA, though, and especially under the EPA, this court can't supply its own more supportive reasoning for that of the State Court of Appeals. And when it is trying to distinguish Fulminante, I'll just give you one example. It said, you know, the trial court accepted that, correctly concluded that, unlike Fulminante, these teens were not in custody. Mr. Fulminante was not in Mr. Cerevola's custody either. They were walking around a track. He was free to speak or not to Mr. Cerevola. He was free to leave Mr. Cerevola. That is actually not even a distinguishing factor of Fulminante to begin with. So, again, what you were faced with here, and you know what? I want to return to a more fundamental point because this court set forth in Taylor v. Maddox and affirmed in Kip v. Davis that when the court ignores the most probative evidence or glosses over the most probative evidence, that is itself a showing that the fact-finding process is unreasonable. What is the most probative evidence you say they're ignoring? Some of the most probative evidence is that, you know, that he convinced Sebastian that he would be killed if he were arrested. That's your view of this. And so, you know, I think we probably all watched, we went and watched these videos, right? And it's obvious that the state courts did. And that seems to me, any reasonable reader, that's what drove the decision. They watched these videos and they thought these people's will is not being over. And they did it based on videos. That is very different. That's very different than, I mean, that seems to be very defensible on the record here. Well, I'll say, first of all, that the videos only covered the point at which they had already decided to confess. There are no videos that take place beforehand. So those videos are just the videos of their confessions. And what it ignores is that a month prior, on June 28th, and I view, I guess, is that they're just these young men are like really good actors. And so they don't look like, I mean, they do not look like they're being coerced in the videos. I don't, you know, that it is hard for me to see. And so, and it's certainly that's what the state courts thought. But your view is nonetheless, they were just really good. They were terrified, but joking about beating the guy's sister with a bat. I will say that that is what the Court of Appeals said the trial court could have thought. I'll put that forward first, because the trial court, again, said none of that. I remember the trial court actually, and I know I'm taking your time. We'll make sure you got my name. It's an important case. But I thought the trial court really did kind of emphasize that he had watched the videos to the trial court judge. I thought it was he listened to the tapes. So, yes. And if you listen to the tapes and, you know, again, I want to reserve the time for rebuttal, but I also want to answer your honors questions. And here's what the tapes said on June 28th. And this is why Sebastian's own district court, federal district court on EPA, said that there were credible threats of violence that were not dissuaded by Haslett. He had still somehow found that it was not unreasonable to find that that was not the reason that Sebastian confessed. And I'll tell you why that that cannot be the conclusion. And I encourage your honors to read ER 2197 to 2201, because this is what happens. When Sebastian says that all he knows about the murderers are the details reported by the police and in the press, Haslett says he doesn't believe him. And excuse my language, I'm quoting from the record. Quote, when I ask for a fucking answer or a fucking question, I need an answer because I'm asking for a reason. I'm asking for one reason to protect my own ass. Somebody gets fucking bit and nobody that works for me is going to get bit. If they get bit, I get bit. You know what I mean? And that's the turning point. And Sebastian gives in. And he says, all right. I remember that. I said a good job. But I also remember that there's also the circumstance where Sebastian says, well, I assume I'm going to get whacked. I mean, I'm fair for that's going to get whacked if if I turn you guys in. And they say, no, we're not going to. Now, what do you do with that? I don't know, but that seems to be the kind of thing that that does that makes sense to defer to the state court. Here's why it matters. And here that that the that the record so that that no, we're not going to do that comes after the confession on July 18th. So that cannot have been the reason to hold that he did not actually prefer his life. And I will say that right after Haslett says, I'm not a killer. Sebastian laughs if you watch the tape and says, well, maybe not you, but you'll get someone else to do it. He doesn't even believe that reassurance. And it's clear from the tape. And on the on the point of whether or not they were joking about, you know, they were afraid and they were acting the part. I think any of you know, if you're trying to convince these mobsters that you're not a threat to them, you're not going to go in there shaking, scared, crying. You're going to try to be like them and try to convince them. And I just I want to just note what Sebastian says. But I can wait for rebuttal if you need, because I don't want to run out of my time. I will. I'll make sure you have time. But I mean, if we maybe maybe you can say that on rebuttal, you'll have to show up plenty of unless my colleagues want to hear it now. I'll make sure you have plenty of time for rebuttal. OK, thank you, Your Honor. Your Honor, seven prior federal judges have looked at the same record and the same or nearly the same legal arguments and have rejected them. And those arguments all point to rather those decisions by the federal judges point to the fact that Mr. Burns had without a doubt no no constitutionally violative coercion was involved. It was a constitutionally sound confession by Mr. Burns. The reason why I mentioned Mr. Burns, because Mr. Raffaele inextricably ties his claim of coercion to Mr. Burns is the one who suffers most of the so-called coercive or pressures over a period of several months. Mr. Argument about that is that that doesn't apply and that Mr. Burns never made the doesn't apply argument. And so maybe you can address that for us. I'm sorry. Again, would you think they're saying it doesn't apply? That's how they that's how they that's why they say they say Mr. Burns never made the argument that doesn't apply. And so we should conclude that doesn't apply and then review it. Your Honor, Epa deference doesn't apply is what they're saying. And I think that they're arguing primarily that you don't outside the world of habeas in this case, Your Honor, because you first start with Epa deference and he has not. Their argument is that Epa doesn't apply because the as I understand it, because the state intermediate court appeals relied heavily, I guess, on substantial evidence and so relied on mostly mostly point to the to the trial court. But yeah, why does why does Epa, why are they wrong that Epa doesn't apply? Your Honor, it applies by the presumption that is mandated by the United States Supreme Court in cases like Harriton versus Richter. We this court, a reviewing court, habeas court presumes that the state court got it right. And contrary to what my opposing counsel just said, you do come up with supporting reasons why a reasonable jurist would come to the same conclusion. That's required as I understand it. But the argument is, yeah, OK, you start off with Epa. Clearly, we have to start off with Epa. And they say, well, unless we can get around the Epa deference, if the state court's decision was contrary to Fulminante or an unreasonable application of Fulminante. And they argue, yes, it was contrary to. So therefore, you can exercise de novo review. And when you get to de novo review, then you're open to consider, you know, you're not bound by that deference. So the question so that's what the argument the argument is, is that is that the state court of appeals decision is contrary to. Now, you can you can work in Rogers there, too, as well. But I think one of the questions I had for you is how does Rogers fit into all of this? And, you know, as I said earlier, under the looks under Ilst, you have to we start out by looking at the state court of appeals decision. But we also know the state court of appeal relied on the on the factual findings of the Superior Court. And they say, well, those factual findings are incorrect because the trial court used the wrong standard. It relied on the Canadian law. First of all, Your Honor, to break there are several questions that I'd like to I'd like to answer each of them. First of all, you would not get out of EDPA even under de novo review because the factual findings by the trial court are still close to presumption of correctness that they have to overturn. You still have to give deference to those factual findings. And Mr. Griffay does not overcome that with his alternate versions and interpretations of how to read the facts. The argument would be that if we're in the land where we're not applying EDPA review, it would be because the because we had found that the facts were, you know, the the factual findings is what pushed us out of, you know, the being applying EDPA. So, I mean, if we're if we're in that land, you're in trouble, I think. I disagree, Your Honor, because Mr. Griffay still has the burden of showing that the federal court's factual determinations are clear error. Let me start with this. I think this might be it. Do you agree with them that the trial court, the state trial court, just relied on the Canadian, the Canadian court's conclusion? Or do you think that the trial court relied on its own fact finding and whatever your position is, why? Mr. Griffay's argument about the Canadian statement, that statement is dicta. It is not, it was not wrapped up into the decision of the court because it's the adjudication we're looking at in under EDPA review. It's not looking at grammatical scrutiny of what was intended or meant. Clearly, the state court was presented with the argument Mr. Griffay is making is here as well as saying you apply Canadian law. And the state court making a statement of state law, which is presumptively conclusively correct and beyond the purview of habeas, as a matter of federal law, no, we did not do that. We made the state court, trial court, lower court, superior court made a independent determination versus on Fulminante. And we are making an independent determination on Fulminante. So this court has rejected the same or similar argument in Burns v. Warner in almost six years ago. That's not what the court did. You have to presume the state court is correct and take it as word that that's not what we're doing here in that 2012 decision by the state court. So we'd like to again return your your honor to. Can I interrupt for just a second? Because let's assume that we are, as Judge Pius has pointed out, in the world of EDPA. Did the did the last reason decision by the Washington Court of Appeals identify the correct federal law? Yes, your honor. And Mr. Griffay agrees. Was that Fulminante? Yes, it is. And Mr. Griffay agrees that the correct standard was was quoted. So, OK, so so that were the case, then what happens to the petition? I'm sorry. What's what's what's the ultimate result for the petitioner? If the Washington Court of Appeals, if we're in EDPA world and the Washington Court of Appeals applied to correct federal law and deciding the case, what happens to the petition? Petition is gone. It's it's it's not a point of whether or not Mr. Griffay, 20 years after the fact, can come up with new interpretations of the facts is already settled and established by the state court and this court of six years ago in Burns. There is no grounds for relief here. He under EDPA, EDPA deference. I'm sorry. The game's over. OK, thank you, your honor. I'd like to return to you mentioned the Rogers case. Rogers is nearly immaterial to the determination here. We must also assume under EDPA deference that the court was aware of Rogers, even though they didn't mention it in their decision and rejected it. I don't know why a state court or any court would refer to Rogers, which is 30 years before Fulminante, when Griffay agrees that the state court applied Fulminante's correct standard. That Fulminante from 1990 is the summation of law. It is the clarification of the law regarding involuntary confessions, court confessions. It's that law that we look to. You know, I would conclude that Mr. Griffay's arguments are grammatical. The way I understand, you know, as I understand their argument, it's that what the trial court did was it applied the wrong standard. It relied on the Canadian standard. And because of that. Its factual findings were in were, you know, incorrect. They were they were impacted by this incorrect and under Rogers, if they were improperly infected. By the wrong standard, then, you know, you can't rely on them. OK, we must assume that I'm just I'm just trying to understand their argument. OK, let me address that directly when I when I read their brief. That's how I understand. Yes, Your Honor, to accept that as their argument, then you would have to assume that the court of appeals had looked at what the trial court did. And it is the reason, the opinion of that state court on what happened in this case and what law applies. So whatever belief that the state court did, the court of appeals got it right as the as the appellate determiner, if you will, of what occurred below. That's definitive. So in a sense, the trial court's reasoning or application law is it's not material here. The difference is upon the court of appeals to summarize and clarified what the governing standard is to tally the circumstances. That's the correct standard. Did Rogers play a role in it? We presume no, because they, you know, they correctly decided to do otherwise is to go between the lines of decision and decide that that's the state court can't be taken at their word. They can't be taken at the word. They said, no, we we didn't. That's not what we do with Canadian law. It's conclusive that they did say that. And this court has to defer to what the court actually did as far as its reasoning based upon reading the text, but also looking overall. Finally, the adjudication would no reasonable jurist come to the same conclusion as a state court did. I think it falls well within EDPA because seven other federal judges also agreed that. And those are fair, fair minded jurists as well. You're honest. And I think that that the conclusion has to be even under DeNova review, that which is you would come to the same conclusion about burns upon which Mr. If a hinges his wagon, the same conclusion, there's no coercion here. And despite the fact that my opposing counsel with all due respect is looking at particular items and statements out of full context, because the full context is the full panoply of facts surrounding how Mr. Burns got involved. His will was not overcome. He agreed at trial. I testified that I got involved in because of greed. I it was he who admitted on the stand at trial that he's the one that mentioned to this putative mafia that he'd like to do some money laundering. He raised that issue first. He's willfully engaged in a criminal enterprise. And there is no concern that even remotely parallels the full monarchy decision, even if you take into account that you don't need an imminent threat. And I think the state court recognized that in its adjudication that even a look at any other possible analog to credible threats, it simply was not presented. And I just point you to the July 19th, 1995 video of Mr. Burns, who is clearly at ease and again, I want to stay in the world of Havis, your honor, you don't need to go there. You don't need to redetermine the facts. Facts is already stated. There's no proof. The state court did not look at the entire evidence. You know, you can read the fact that it mentioned in appellate state appellate standard one way. But at the same time, you have to presume as required that they applied the correct law unless shown otherwise. You know, there's there's Supreme Court case. I think it's Holland that says that, you know, even if the state court's reasoning is a bit odd, but you have to give them the benefit of the doubt. And you actually not as odd. You can disagree. You can even find error if you wanted to. You can find that. Oh, no. They you know, they got it wrong on this point or they overlooked this point. As Mr. Reface seems to emphasize now, that doesn't matter. That doesn't matter. It is overall the adjudication, whether or not the adjudication, the judgment of the court is so unreasonable. So clearly unreasonable that no fair minded jurist would come to that conclusion. So are there any questions, Your Honors? Thank you very much. Thank you, counsel. Why don't we go ahead and put three minutes on the clock for rebuttal? We'll give you his time that he left over. I appreciate that, Judge Van Dyke. It's not enough to intone the totality of the circumstances test. You have to look at what the court of appeals actually did here. Did it just look through substantial evidence or did it actually weigh factors that favored Atif? And one very blatant way that you know that it did not weigh the factors favoring Atif is that his circumstances are actually different than Sebastian's. No reasonable jurist, no reasonable person could look at these pages and believe that Sebastian felt entirely free for sure. And of course, once Sebastian eventually made incriminating statements and then fully made up a confession a couple of weeks later to cooperate with Haslett, Atif had no choice at all. And I'm quoting now from what Haslett said about Atif. If Atif ends up going down, Haslett said, you're going to go down. And if you go down and fuck, you know I'm going to go down. See what I'm saying? Don't fucking sell me short and don't ever let your friends try to sell me short because if they start selling me short, you being in the middle is going to hurt. Now, my friend on the other side is insisting, despite this court's en bloc decision of Frans V. Hazy, that all you look to is the ultimate determination and you ignore what the court's actually said. And Frans V. Hazy makes very clear that you cannot do that. In fact, it overturned a prior panel precedent from this court that had that very standard. And, you know, it's not just that we said it was contrary to fulminante. We also said what the Court of Appeals did here was contrary to Rogers. Rogers made abundantly clear that when facts are found pursuant to a procedurally deficient fact-finding process infected by the wrong legal rule or framework, none of those facts can be relied on. You can't then apply substantial evidence review to those fact findings. And, you know, I want to make a couple other points. Nothing in the trial court opinion weighed the relevant circumstances. And like I said, the only thing that looks like they are themselves considerations of the totality of the circumstances were, in fact, themselves from the Canadian courts. And I think it's incredibly important to note here that the prosecutor said about the Fifth Amendment inquiry, we didn't even brief that issue, Your Honor, to the trial judge because the Canadian courts already resolved it. And then it states in argument. You say that it's certainly true that the trial court, which is often the case, did not do the job that the Court of Appeals did. But like literally in the sentence. So you have the sentence that says the Canadian court reviewed and found no evidence of coercion. And this court makes the same finding, which is what you rely on to say. We're just applying, applying what the Canadian court said. But but literally like one sentence, a couple sentences, a paragraph before says, unlike Mr. Fulminante, this was not noncustodial. They're free to speak or not. It's distinguishing. So it's kind of it seems like a stretch. It seems like reading it out of context to to say, well, that has to mean that it was just applying the Canadian courts. I don't believe the Canadian courts would have cited the Fulminante case. They had no reason to. May I answer? So, you know, like I said earlier, though, even that attempt to distinguish Fulminante was itself incorrect because like Mr. Fulminante, Mr. Fulminante was also not in Mr. There is a difference for you to be arguing that they incorrectly applied versus the fact that they, you know, that they identified an incorrectly applied versus the fact that they just ignored, which seems to be the gist of the main argument you're making is that they just ignored. Well, and so there's two because there remember there are two inquiries here. There's the subjective inquiry and there's the objective inquiry with regard to the subjective inquiry. I think that's where the trial court is bringing in those factors and saying their individual wills were not overborne. With regard to the objective inquiry, it then says the Canadian police tactics would not overcome or bring the Canadian administration of justice into disrepute. That is, there is no way to to to have that comport with our constitutional objective standard, which is whether it would overrun the mill, overbear the will of a run of the mill suspect. You know, the tragedy of this case is that two men have been in prison for the majority of their lives for crimes they didn't commit, crimes that were very likely committed by the people whose blood was mixed in with Tariq's in the shower and in the garage and whose hair was on the bed next to Tariq's body that the detectives said had to have come from the killer all the way up until the point when DNA testing proved it was not Sebastian's, not a Tiff's and not any of the victims. Thank you, Your Honours. Thank you, counsel. Thank you to both counsel for your argument this morning. That this case will be submitted as of today.
judges: PAEZ, VANDYKE, Benitez